**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| DIONNE YOUNCE and,<br>KENNETH W. GREENE<br><br>  Plaintiffs,<br><br>  v.<br><br><br>CITY OF JACKSONVILLE, FLORIDA,<br>a Florida municipal corporation,<br><br>  Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)       Case No. 3:22-CV-00931<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MOTION FOR PRELIMINARY INJUNCTION**

A City of Jacksonville ordinance requires all residents on the sex offender registry to post a sign on their front door every Halloween stating, "no candy or treats here."  The ordinance also prohibits such residents from displaying any decorations if the display is "primarily targeted to entice, attract, or lure a child" onto the property.  A violation of either provision is punishable by a fine or imprisonment

These provisions are unconstitutional, both facially and as applied to Plaintiffs. The sign-posting provision requires Plaintiffs to broadcast a government message against their will, and therefore amounts to compelled speech in violation of the First Amendment.  Moreover, the restriction on home

displays infringes on their right to engage in expressive conduct, in violation of the First Amendment's guarantee of free speech.  Finally, the display restriction is unconstitutionally vague because it fails to provide notice that is adequate to enable an ordinary person to understand what is required to comply with it, in violation of the Due Process Clause of the Fourteenth Amendment.

Plaintiffs, residents of the City of Jacksonville who are registered sexual offenders, do not wish to be compelled to carry the government's message on Halloween.  They also want to engage in expressive conduct by displaying holiday and religious decorations during the upcoming holiday season without fear of arrest and prosecution.  Plaintiffs thus seek a preliminary injunction declaring the challenged provisions of the ordinance unconstitutional and enjoining their enforcement.

## SUMMARY OF FACTS[1]

### A. Jacksonville City Ordinance §685.104: Prohibited Activities for Sexual Offenders and Sexual Predators Related to a Nationally or Locally Holiday or Seasonal Events.

In 2015, the City of Jacksonville enacted City Ordinance § 685.104, entitled "Prohibited Activities for Sexual Offenders and Sexual Predators Related to a Nationally or Locally Holiday or Seasonal Events."  Ordinance 2015-2014-E, Exhibit 1.  Changes were made to the Ordinance by an amendment in 2016, *see*

---

[1] Plaintiffs hereby adopt and incorporate herein the Statement of Facts as set forth in ¶¶ 16-56 of Plaintiffs' Verified Complaint, ECF 1.

Ord. 2016-233-E, Exhibit 2, which resulted in the Ordinance in its present form.

Section 685.104, Exhibit 3.

Section 685.104(a)(3)(ii), which regulates Halloween activities, states as follows:

(3) Any person designated a Sexual Offender or Sexual Predator shall:

(ii)   From 6:00 a.m. to 11:59 p.m., on October 31 (or any other day on which Halloween is celebrated) post a sign at his or her residence, including a vessel, or vehicle, stating, "No candy or treats here." Such signs shall be in letters at least two inches high and shall be legible on the property leased, rented, owned or occupied by the Sexual Offender or Sexual Predator, and clearly visible from the street, waterway, or any property that is open to public access. The signs may be removed after 11:59 p.m. on October 31, or the day on which Halloween is celebrated.

Moreover, under § 685.104(a)(3)(iv), a sexual offender or predator shall:

(iv)   Not place or allow any display, including but not limited to displays for any nationally or locally recognized holiday or seasonal event or practice, to be visible from the exterior of any Sexual Offender's or Sexual Predator's residence, including a vehicle or vessel, or on any property which is leased, rented, owned or occupied by such person, if such display is primarily targeted to entice, attract, or lure a child onto any residence or property, or onto or nearer to any vehicle or vessel rented, owned or occupied by such person. Enforcement of this section shall not be limited to the actual calendar date of any given nationally or locally recognized holiday or seasonal event or practice.

In the Definitions section, § 685.104(b)(4), "Display" is defined as "any decoration including, but not be limited to, lighting, figurines, posters, artwork, crystals, bales of hay, scarecrows, etc. which is visible to the public in plain view and is primarily targeted toward children." There is no definition, however, of the term "primarily targeted toward children." Nor does the Ordinance define

the phrase "primarily targeted to entice, attract, or lure a child," in § 685.104(a)(3)(iv).

A violation of the Ordinance is punishable by "a fine not exceeding $500.00 for each occurrence, or by imprisonment for a term not exceeding 60 days or by both a fine and imprisonment for each occurrence, unless prohibited by law." § 685.104(c).

The Ordinance is "enforceable throughout Duval County," § 685.104(e), and is actively enforced by the Jacksonville Sheriff's Office. *See* News story, Exhibit 4. Every year on Halloween, detectives from the Jacksonville Sheriff's Office visit the home of registrants to check if they have posted the required sign stating, "No candy or treats here," pursuant to § 685.104(a)(3)(ii). ECF 1 at ¶ 25. During other holidays and seasonal events, particularly during the Christmas holiday season, detectives check the residences to determine if there are displays which are "primarily targeted to entice, attract, or lure a child," and in violation of § 685.104(a)(3)(iv). *Id.* at ¶ 26.

The State of Florida has a sexual offender and predator registry which is available to the public on its website. Through the search function, the public can put in an address to determine if a sexual offender or predator lives at that specific location. *See* https://offender.fdle.state.fl.us/offender/sops/offenderSearch.jsf. The Jacksonville Sheriff's Office website has a link on its homepage which

automatically connects the user to the Florida sexual offender registry.   On Halloween, the Jacksonville Sheriff's Office sends alerts to the public through its website which inform the public of the restrictions in the Ordinance.   *See* Jacksonville Sherriff's Office, Bulletin, S*exual Offenders and Sexual Predators on Halloween* (Oct. 27, 2021), Exhibit 5.

### B.   Effects of the Halloween Sign Requirement:   § 685.104(a)(3)(ii)

Plaintiffs are residents and homeowners in the City of Jacksonville who are required to register as sexual offenders and are thus subject to the requirements of the Ordinance.   Plaintiff Younce has a college education, works in the restaurant business, and has lived in Jacksonville for eight years. ECF 1 at ¶¶ 13, 30. Plaintiff Greene was honorably discharged from the U.S. Navy, is currently retired from the home improvement industry, and has lived in Jacksonville for sixty years, where he spends time with his wife and six grandchildren who live in the area.  *Id.* at ¶¶ 14, 44.

Pursuant to § 685.104(a)(3)(ii). on every Halloween from 6:00 a.m. until 11:59 p.m., Plaintiffs have posted a sign in two-inch letters at their residence which states, "No candy or treats here."

For Plaintiffs, Halloween is a day of great stress, anxiety, and fear. On that day, Plaintiffs stay at home and constantly check to see that the sign is properly in place and clearly visible from the street out of fear that the sign will become dislodged, obscured, or even taken down in an act of vandalism.  ECF 1 at ¶ 33,

47.  Because the Jacksonville Sheriff's Office alerts the public on its website on every Halloween that all sexual offenders and predators are required to post the sign, Plaintiffs fear that people will target them for harassment, vandalism, and even violence.  *See id.* at ¶¶ 34, 47; Bulletin, Exhibit 5.

Plaintiffs object to being compelled to having to publicly identify themselves as people designated as sexual offenders, and their homes as places where one resides.  They also object to the sign's implication that they pose a danger to children, a message with which they vehemently disagree.  This public declaration at Halloween draws immediate attention to their residence and exposes them to a real threat of harassment, vandalism, and the dangerous mischief common on Halloween night.  Plaintiffs are trying to move past their convictions, but this sign impedes that transition by exposing them to ridicule each year during Halloween.  ECF 1 at ¶¶ 35, 48.

Despite their objections to having to post the sign on Halloween, Plaintiffs dutifully comply because they fear being arrested and prosecuted under the Ordinance.  *Id.* at ¶¶ 36, 49.

### C.  Effects of the Ban on Displays:  § 685.104(a)(3)(iv)

#### 1)    Plaintiff Dionne Younce

Plaintiff Younce wants to place a display on the outside of her home during holidays and seasonal events, but she does not because of the restriction in § 685.104(a)(3)(iv), which prohibits designated sexual offenders from placing a

display outside their home which is "primarily targeted to entice, attract, or lure a child" onto their property.  Prior to being designated as a sexual offender, Ms. Younce routinely decorated the outside of her residence with various displays during several different holiday and seasonal events, especially during the Christmas season.  ECF 1 at ¶¶ 37-39.

For the Christmas season, Ms. Younce presently wants to decorate the outside of her home with a traditional Christmas display that includes colored and white lights trimming the windows and front door of her home, a Christmas wreath on her front door, and a manger with a figure of baby Jesus.  The message Ms. Younce seeks to convey by the display is that Christmas is the season to celebrate love, peace, happiness, joy, charity to others, and the birth of Jesus.  *Id.* at ¶ 40.

For Thanksgiving, Ms. Younce presently wants to decorate the outside of her home with the following items: a harvest wreath of fall florals and greenery on her front door; pumpkins and other gourds; a cornucopia of various produce and flowers; hay; and a scarecrow.  The message Ms. Younce seeks to convey by the display is that Thanksgiving is the season to give thanks, to be grateful for the blessings we enjoy, and to share and help others. Ms. Younce also seeks to convey the importance of family.  *Id.* at ¶ 41.

Ms. Younce has spoken to law enforcement officers and asked whether certain displays were appropriate and complied with the Ordinance.  She has

been given inconsistent answers and has been told only that she can put a display on the outside of her home so long as the display does not "entice, attract, or lure a child" onto her property. She has been given no clear guidance or direction by law enforcement as to what constitutes a violation of the Ordinance and has been left to guess whether a certain display or item would violate the law. The threat of arbitrary enforcement of the Ordinance has been taxing and has deterred Ms. Younce from putting displays and decorations outside her home during the Thanksgiving and Christmas seasons. *Id.* at ¶ 42.

As a result, Ms. Younce does not put *any* displays or decorations on the outside of her home at *any* time because she is fearful of being arrested and prosecuted under § 685.104(a)(3)(iv) of the Ordinance. *Id.* at ¶ 43.

### 2)    Plaintiff Kenneth W. Greene

Mr. Greene also wants to place a display on the outside of his home during the Christmas season, but he does not because of the restriction in § 685.104(a)(3)(iv). Prior to being designated as a sexual offender, he annually decorated the outside of his residence with various displays during the Christmas season. *Id.* at ¶¶ 50-51.

A devout Christian, Mr. Greene would like to put out a Christmas display—as he used to prior to being designated as a sexual offender—which includes a wreath on his door and lights on the front of his house, and which features a four-foot cross with white lights on the center of his lawn. Mr. Greene believes that

Christmas has become too commercialized and that many people have forgotten the true meaning of Christmas.  Through his display he wants to express that the purpose of the Christmas holiday is to celebrate the birth of Jesus.  *Id.* at ¶ 52.

Mr. Greene has spoken to law enforcement officers and asked whether certain displays were appropriate and complied with the Ordinance.  He has been given inconsistent answers and has been told only that he can put a display on the outside of his home so long as it does not "entice, attract, or lure a child" onto his property.  He has also been told that the prohibition applies to displays *inside* his home if they can be seen from the outside. *Id.* at ¶ 53.  He has been given no clear guidance or direction by law enforcement as to what constitutes a violation of the Ordinance and has been left to guess whether a certain display would violate the law.  The threat of arbitrary enforcement of the Ordinance has caused Mr. Greene distress and has deterred him from putting a display outside his home during the Christmas season.  *Id.* at ¶¶  54-55.

As a result, Plaintiff Greene does not put *any* displays or decorations on the outside of his home at *any* time because he is fearful of being arrested and prosecuted under § 685.104(a)(3)(iv) of the Ordinance.  *Id.* at ¶ 56.

## ARGUMENT

Plaintiffs are entitled to a preliminary injunction enjoining the enforcement of §§ 685.104(a)(3)(ii) and (iv) of the Ordinance to allow Plaintiffs, and all other registered offenders, to exercise their rights under the First

Amendment.  A district court may issue preliminary injunctive relief when: (1) there is "a substantial likelihood that [plaintiffs] will succeed later on the merits"; (2) the plaintiffs "will suffer an irreparable injury absent preliminary relief"; (3) the plaintiffs' injuries likely "outweigh any harm that its opponent will suffer as a result of an injunction"; and (4) preliminary relief would not "disserve the public interest."  *Scott v. Roberts*, 612 F.2d 1279, 1290 (11th Cir. 2010).

I.   **Plaintiffs Are Likely to Prevail on the Merits of Their Claim in Count I That § 685.104(a)(3)(ii) Compels Speech in Violation of the First Amendment.**

The First Amendment "includes both the right to speak freely and the right to refrain from speaking at all."  *McClendon v. Long*, 22 F.4th 1330, 1336 (11th Cir. 2022) (*quoting Wooley v. Maynard*, 430 U.S. 705, 714 (1977)).   The requirement to post a sign at their residence plainly compels Plaintiffs to broadcast the government's message against their wishes, and therefore must satisfy strict scrutiny.   Because Defendant cannot demonstrate that the requirement is the least restrictive means of achieving a compelling government interest, the provision violates the First Amendment.

In fact, the Eleventh Circuit recently struck down a practice nearly identical to the one at issue here, holding that it amounted to unconstitutional compelled speech. *McClendon*, 22 F.4th at 1337.   In *McClendon*, the Eleventh Circuit confronted a county sheriff who directed his deputies on Halloween to post a sign in the yard of every registered sex offender in the county which stated: "STOP.

Warning! STOP.  No trick-or-treat at this address!!  A Community Safety Message from Butts County Sheriff Gary Long."  *Id.* at 1332.  The Court held that the warning signs violated the First Amendment because they compelled the sex offenders to speak against their will, even though the sheriff posted the signs.

Section 685.104(a)(3)(ii) plainly constitutes unconstitutional compelled speech under *McClendon.*  It requires Plaintiffs and all registered sexual offenders to post a similar sign at their residence *themselves*—a requirement that compels speech to a much further degree than the sheriff-posted signs in *McClendon*.  By requiring Plaintiffs to post the sign at their residence under pain of arrest and prosecution, the Ordinance compels Plaintiffs to effectively announce to the public that they are sexual offenders and that they pose an extreme danger to children—a message with which they vehemently disagree.  By requiring Plaintiffs to use their own homes to serve "as a 'billboard' for government speech," Defendant has compelled Plaintiffs to speak in violation of the First Amendment.  *Id.* at 1337 (quoting *Wooley*, 430 U.S. at 713).[2]

Because the Halloween sign requirement is classic compelled speech, it is a content-based burden that must satisfy strict scrutiny.  *Id.* at 1337-38. That is, the City must demonstrate that the sign-posting requirement is a "narrowly tailored

---

[2] Moreover, the provision violates the speech rights not just of sexual offenders but also of anyone else who lives in the same residence as the offender.  Section 685.104(a)(3)(ii) requires the signs to be posted on all "property leased, rented, owned, or occupied by the sexual offender or predator."  So, for example, a non-offender parent who owns their home and allows their child—a registered sexual offender—to live with them is forced to post the sign on their property.

means of serving a compelling state interest." *Id.* at 1338. The City must also show that the provision is the "least restrictive means" of accomplishing that vital interest. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). This is a difficult hurdle to clear, as content-based restrictions on speech "are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). And the City "bears the burden of rebutting the presumption of invalidity." *Playboy Ent. Group*, 529 U.S. at 817. Indeed, "[f]ew laws survive" this exacting standard, *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1255 (11th Cir. 2004), and section 685.104(a)(3)(ii) is no exception.

Plaintiffs do not contest that the protection of children is a compelling state interest, but the City cannot show that the ordinance is the least restrictive means of achieving it. As in *McClendon*, Defendant cannot show that Jacksonville registrants "actually pose a danger to trick-or-treating children or that these signs would serve to prevent such danger." *McClendon*, 22 F.4th at 1338. And as in *McClendon*, the state makes its sex offender registry readily accessible online, and the Jacksonville Sheriff prominently promotes the registry's use by the public on its website—including in a special online alert on Halloween—thereby "diminishing the need to require residents to disseminate the same information in yard signs on their private property." *Id.* Thus, even "[a]ssuming that yard

signs alerting people to the residences of registered sex offenders on Halloween would prevent the sexual abuse of children . . . the signs are not tailored narrowly enough." *Id.* Section 685.104(a)(3)(ii) therefore fails strict scrutiny.

Other district courts have reached similar conclusions. For example, in *Doe v. City of Simi Valley,* a court struck down an ordinance that was virtually identical to section 685.104(a)(3)(ii), holding that it amounted to compelled speech in violation of the First Amendment. Case No. 12-8377 PA (VBKX), 2012 WL 12507598, at *8 (C.D. Cal. Oct. 29, 2012). The court held that the city's Halloween ordinance requiring sex offenders to post a sign on their front door stating, "No candy or treats at this residence" "compel[led] sex offenders to speak" and did not satisfy strict scrutiny. *Id.* at *7. *See also Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1318, 1321 (M.D. Ala. 2019) (state law requiring offender's driver's license "branded" with "CRIMINAL SEX OFFENDER" in bold letters was compelled speech and violated the First Amendment). Plaintiffs therefore have demonstrated a substantial likelihood of success on the merits of their compelled speech claim.

II. **Plaintiffs Are Likely to Prevail on Their Claim in Count II That The Restriction on Displays in § 685.104(a)(3)(iv) Violates the First Amendment.**

A. **Holiday and Seasonal Displays Are Expressive Conduct Protected by the First Amendment**

Constitutional protection for freedom of speech "does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Indeed,

the First Amendment guarantees "all people . . . the right to engage not only in 'pure speech,' but 'expressive conduct' as well." *Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (quoting *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968)).   And the right to engage in protected expressive conduct at one's home has long been recognized.   *See Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021).

Courts apply a two-part test to determine whether particular actions qualify as expressive conduct that is protected by the First Amendment.   The test asks: (1) "whether '[a]n intent to convey a particularized message was present,'" and (2) whether "the likelihood was great that the message would be understood by those who viewed it."   *Id.* at 1336–37.   *See also Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale,* 901 F.3d 1235, 1240 (11th Cir. 2018) (describing the two-part test and holding that food sharing qualified as expressive conduct). In applying the second factor, though, a particularized message need not be apparent. Rather, this factor asks simply "whether the reasonable person would interpret [the conduct] as *some* sort of message, not whether an observer would necessarily infer a *specific* message."   *Holloman*, 370 F.3d at 1270.

The holiday and seasonal displays which Plaintiffs want to place in front of their homes—Christmas decorations which include lights, wreaths, figurines, a cross, and a manger scene—clearly qualify as expressive conduct.  First, Plaintiffs

-14-

intend to convey a message of peace, love, appreciation for the Christmas spirit, the importance of family, and the birth of Jesus.  ECF 1 at ¶¶ 40, 41, 52.  Second, a message is plainly apparent to a reasonable viewer. Christmas decorations are reasonably understood as universal messages of peace, love, and happiness, and the inclusion of a manger scene and cross has long been seen as an expression of the Christian faith.  *See Lynch v. Donnelly*, 465 U.S. 668, 685 (1984) ("Even the traditional, purely secular displays extant at Christmas, with or without a crèche, would inevitably recall the religious nature of the Holiday. The display engenders a friendly community spirit of good will in keeping with the season."); *Grutzmacher v. Pub. Bldg. Comm'n of Chicago*, 700 F. Supp. 1497, 1504 (N.D. Ill. 1988) ("Christmas trees, wreaths, and garlands are secular expressions of the 'Christmas Holiday Season' as a universally recognized period of happiness, gentleness and kindness among people.").   Plaintiffs' holiday displays are therefore protected expressive conduct.

**B. The ban on displays in § 685.104(a)(3)(iv) fails intermediate scrutiny.**

Because Section 685.104(a)(3)(iv) of the Ordinance burdens expressive conduct, it must satisfy intermediate scrutiny, meaning the City must show that the law is narrowly tailored to achieve a significant government interest and that it leaves open ample alternatives of communication. *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (2011).  This burden is not satisfied by mere speculation.  Rather, the City must demonstrate that the danger it seeks to address is real, and that its

restriction will in fact alleviate it to a material degree.   *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993).   To satisfy this requirement, the Supreme Court has explained, "the government must demonstrate that alterative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley,* 573 U.S. 464, 495 (2015).   *See also id.* at 494 (government must demonstrate that it "seriously undertook to address the problem with less intrusive tools readily available to it" and "considered different methods that other jurisdictions have found effective.").   Finally, the Court cannot "simply take the City at its word that the Ordinance serves the aforementioned interests." *Buehrle v. City of Key West*, 813 F.3d 973, 978-79 (11th Cir. 2015).   Rather, the City must show that it "rel[ied] on at least *some* pre-enactment evidence that the regulation would serve its asserted interests," and that its concerns rest on "more than merely speculative factual grounds." *Id.* at 979, 980 (emphasis in original; quotations/citations omitted).

Section 685.104(a)(3)(iv) fails the narrow tailoring test because the City cannot show, with pre-enactment evidence, that the prohibition furthers its objective in reducing the commission of crimes against children.   The material offered with the passage of the ordinance offers only conclusory statements, without supporting evidence, that sexual offenders "have been known to use" holiday and seasonal events to lure children to areas where children are susceptible to attack.   *See* Preamble, Ordinance 2015-214-E, Exhibit 1.   Such

evidence is insufficient to meet the City's burden to show that the provision is narrowly tailored. *See Buehrle*, 813 F.3d at 979 (conclusory statement of purpose rejected where it contained no details, data, or evidence).  The City did not rely on any information showing that any crime committed by someone already on the sex offender registry was in any way related to displays attracting children to their home. *See Packingham v. North Carolina,* 137 S. Ct. 1730, 1733-34 (2017) (striking down law prohibiting sex offenders from accessing social media sites because the state did not meet its burden to show that [the] sweeping law [was] necessary or legitimate to serve that purpose" of protecting children).  In short, the City cannot show that the ordinance directly advances its asserted goal. Section 685.104(a)(3)(iv) therefore fails intermediate scrutiny.

Section 685.104(a)(3)(iv) also fails intermediate scrutiny because it is fatally overinclusive due to its extraordinary overbreadth and ambiguity.  It bans "any display"—defined as "any decoration, including but not limited to" a list of items[3]—"including but not limited to displays for any nationally or locally recognized holiday or seasonal event or practice, to be visible from the exterior of the residence ... if such display is primarily targeted to entice, attract, or lure a child onto" the property.  Section 685.104(a)(3).  Thus, the law covers *any* decoration—not just seasonal or holiday decorations—visible from the exterior, which includes those inside the home that can be seen through the window. This

---

[3] The list concludes with "etc.," confirming that the definition is limitless.

could conceivably include any light, candle, picture, or piece of furniture inside or outside the home.

Moreover, although not an outright ban on all displays, "ambiguities as to what registrants are required to" do to conform to the law, "combined with the criminal sanctions for failure to [comply], unnecessarily chill protected speech." *Doe v. Harris*, 772 F.3d 563, 579 (9th Cir. 2014) (law requiring sex offenders to report internet identifiers failed intermediate scrutiny even though it did not ban communication, but only deterred it with onerous reporting requirements). *See also Virginia v. Hicks,* 539 U.S. 113, 118–19 (2003) (law impermissibly overbroad if it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).  As demonstrated below in the section on vagueness, it is impossible to determine whether a display could be interpreted as "primarily targeted to entice, attract, or lure a child" onto the property.  The displays which Plaintiffs want to place on their property are aimed at the entire community, but Plaintiffs are confronted with the dilemma of whether the displays could be construed by an individual law enforcement officer as targeting children.  As a result, Plaintiffs and other registrants err on the side of caution and refrain from placing displays of any type outside their home for fear of arrest and prosecution. Thus, the "chilling effect" of the ordinance operates as a ban on all displays.  *Harris*, 772 F.3d at 582.

Narrow tailoring requires "a close fit between ends and means" to ensure that the law does not "'burden substantially more speech than is necessary to further the government's legitimate interests.'" *McCullen*, 573 U.S. at 486 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)) (striking down law imposing speech buffer zones around abortion clinics in part because the law applied statewide instead of targeting the one problematic clinic).  The display ban cannot satisfy this test.  The breadth of its coverage—including *any* decoration regardless of its probable connection to criminal activity—combined with the chilling effect of its ambiguity—transforming the provision into a total ban—render the provision fatally overinclusive.  *See Harris*, 772 F.3d at 582 (holding that requirement on sex offenders to report their internet identifiers was not narrowly tailored in part because it applied "to all websites and all forms of communication, regardless of whether the website or form of communication is a likely or even a potential forum for engaging in illegal activity."); *White v. Baker*, 696 F. Supp. 2d 1289, 1311 (N.D. Ga. 2010) (similar holding); *Cutting v. City of Portland, Maine*, 802 F.3d 79, 82, 90 (1st Cir. 2015) (ordinance prohibiting standing on a median, which city enforced against panhandlers, was not narrowly tailored because it was "geographically overinclusive").

Plaintiffs are therefore likely to succeed in showing that § 685.104(a)(3)(iv) violates the First Amendment.

-19-

**III.   Plaintiffs Are Likely to Succeed on the Merits of Their Claim in Count III That § 685.104(a)(3)(iv) Is Impermissibly Vague in Violation of the Fourteenth Amendment.**

"It is, by now, a 'basic principle of due process' that an enactment is void for vagueness if its prohibitions are not clearly defined." *Burns*, 999 F.3d at 1349 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). A law violates the Due Process Clause of the Fourteenth Amendment and is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 253–54 (2012). In fact, when protected speech is at issue, a "greater degree of specificity" is required. *Smith v. Goguen*, 415 U.S. 566, 573 (1974). *See also Holder v. Humanitarian Law Project,* 561 U.S. 1, 19 (2010) (quotations/citations omitted) ("[W]hen a statute interferes with the right of free speech or of association, a more stringent vagueness test should apply."). That is because "a vague statute . . . operates to inhibit the exercise of [First Amendment] freedoms" because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109.

The display ban in section 685.104(a)(3)(ii) is unconstitutionally vague on several fronts.  First, it is impossible to determine what constitutes a display that "is primarily targeted to entice, attract, or lure a child" onto the property. The phrase is highly subjective, as different people undoubtedly have differing views on what is child-oriented.[4]  Is the Christmas display that Plaintiffs want to put out that includes lights, wreaths, decorations and features either a cross or manger scene one that is "primarily targeted to entice, attract, or lure a child onto any residence or property?"  Christmas is appealing to adults and children alike, but children have a particular interest in the holiday—does that make Christmas displays "primarily targeted" toward them?  What if a registered offender puts out a University of Florida football flag?  A young football fan could stop in front of the property to say "Go Gators"—does this render the display prohibited, because a child has been "entice[d]" to stop?  What about a fall/Thanksgiving display which features a harvest wreath of fall florals and greenery, along with pumpkins and a cornucopia?  The Ordinance does not say whether these typical displays are permitted.

The word "primarily" is also impermissibly vague.  Does "primarily" mean that the display must be "mostly" targeted to "entice, attract, or lure" children?

---

[4] It is also unclear whether the phrase operates as a *mens rea* requirement, in that registrants will only violate it if they intend to target a display toward children, or whether the provision is violated if the display is determined to be targeted toward children regardless of the registrant's intent.  Faced with this uncertainty, Plaintiffs, and all registrants, undoubtedly avoid all displays altogether.

In other words, could there be a display that is only somewhat targeted toward children that does not violate the Ordinance? The Ordinance contains no answers. In *Doe v. Cooper*, the Fourth Circuit held that a state statute prohibiting the presence of registered sex offenders in places "where minors gather for regularly scheduled educational, recreational, or social programs" was vague in violation of due process. 842 F.3d 833, 844 (4th Cir. 2016). Central to the court's holding was the absence of a "principled standard" for determining whether such programs are "regularly scheduled." *Id.* at 844. And the statute provided "no examples" to guide offenders or law enforcement as to how frequently the programs would need to occur in order to be "regularly scheduled." *Id.* Section 685.104(a)(3)(ii) suffers from a similarly vague adverb. The provision provides no standard to determine what it means to be primarily targeted to entice, attract, or lure a child. Because the Ordinance "contains no standard for determining what a [registrant] has to do in order to satisfy" it, it is void for vagueness. *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (statute requiring persons to carry "credible and reliable identification" void for vagueness).

The Supreme Court has invalidated similarly vague phrases. In *Cincinnati v. Coates*, the Supreme Court held that an ordinance which banned groups assembled on sidewalks from acting in a "manner annoying to persons passing by" was unconstitutionally vague because "men of common intelligence must

necessarily guess at its meaning." 402 U.S. 611, 614 (1971). *See also City of Chicago v. Morales,* 527 U.S. 41, 56 (1999) (phrase "to remain in any one place with no apparent purpose" unconstitutionally vague); *Johnson v. United States*, 576 U.S. 591, 596-606 (2015) (phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" was void for vagueness). The display restriction should meet the same fate here.

The provision provides law enforcement officers with unchecked enforcement powers to arbitrarily decide on the spot what these terms mean and against whom the law should be applied. Indeed, Plaintiffs have spoken to law enforcement officers and asked whether certain displays were appropriate and complied with the Ordinance, but have been given inconsistent answers. Because the law leaves to individual police officers the task of "decid[ing], without any legally fixed standards, what is prohibited and what is not in each particular case[,]" it is void for vagueness. *Giaccio v. State of Pa.*, 382 U.S. 399, 403 (1966).

The impact of the provision is to deter Plaintiffs and others from exercising their First Amendment rights because they cannot determine how to conform their conduct to the law. Faced with these restrictions, Plaintiffs, and any reasonable person, will simply remain silent out of fear of being arrested—the precise result the Due Process Clause and First Amendment are designed to prevent. The Ordinance therefore is void for vagueness, and Plaintiffs are likely to succeed on the merits of their Due Process Claim in Count III.

Because the Ordinance's "very existence may cause others not before the court to refrain from constitutionally protected speech or expression[,]" Plaintiffs seek a declaration that the Ordinance is facially unconstitutional and unenforceable against anyone.  *Hill v. Colorado*, 530 U.S. 703, 731-32 (2000) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

## IV.  Plaintiffs Have Established the Remaining Criteria for a Preliminary Injunction

### A.  Irreparable Injury

"[I]t is well settled that the 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury.'"  *KH Outdoor, LLC v. City of Titusville*, 458, F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  The penalization of Plaintiff's First Amendment rights cannot be "cured by the award of monetary damages." *KH Outdoor,* 458 F.3d at 1272.  Irreparable injury is therefore established.

### B. Balance of Harms and Public Interest

The third and fourth preliminary injunction criteria are also satisfied. With respect to the balance of harms, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury."  *Scott*, 612 F.3d at 1297.  On the other side of the ledger, "the public when the state is a party asserting harm, has no interest in enforcing an unconstitutional law."  *Id.* Enforcing unconstitutional laws also wastes valuable public resources.  Finally, because the public has no interest in enforcing an unconstitutional speech

restriction, an injunction against enforcement cannot "disserve" the public interest. *Id.* at 1290, 1297.

## **CONCLUSION**

Based on the above argument and authorities, Plaintiffs respectfully requests that this Court declare that both on their face and as applied to Plaintiffs, §§ 685.104(a)(3)(ii) and (iv) of the Ordinance violate the First and Fourteenth Amendments, and immediately enjoin the City of Jacksonville and its agents from enforcing said sections of the Ordinance.

Respectfully submitted,

Dante P. Trevisani
Florida Bar No. 72912
dtrevisani@floridajusticeinstitute.org
Ray Taseff
Florida Bar No. 352500
rtaseff@floridajusticeinstitute.org
Florida Justice Institute, Inc.
PO Box 370747
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (Fax)

By:   *s/Ray Taseff*
      Ray Taseff

**Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed today, August 26, 2022, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case.  I also served a copy of this motion, together with the Verified Complaint, on Defendant City of Jacksonville via email, as follows:

General Counsel
City of Jacksonville
Jason Teal, JTeal@coj.net
Laura Boeckman, LBoeckman@coj.net
Craig Feiser, CFeiser@coj.net


By: *s/Dante P. Trevisani*
Dante P. Trevisani