UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DIONNE YOUNCE and
KENNETH W. GREENE,

      Plaintiffs,

v.                            CASE NO.: 3:22-cv-931-TJC-PDB

CITY OF JACKSONVILLE, a
Florida municipal corporation,

      Defendant.

_____/

## CITY OF JACKSONVILLE'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DOC. 2)

      Defendant, City of Jacksonville ("City"), pursuant to this Court's Order of August 31, 2022 (Doc. 6), hereby files this response to Plaintiffs' Motion for Preliminary Injunction (Doc. 2).  Plaintiffs' motion should be denied.

## I. Background

      Plaintiffs are registered sexual offenders ("RSOs") who were convicted of sex crimes involving minors.  They seek to enjoin enforcement of two provisions of Jacksonville's Ordinance Code ("Code") governing their holiday and seasonal activities.  Their Complaint and Motion (Docs. 1 and 2) come just in time for Halloween, with its long tradition of children going door-to-door to "trick or treat" for candy.  Halloween is the only holiday where children are impliedly invited onto the properties of strangers.

Plaintiff Dionne Younce is an RSO convicted in 2016 of Unlawful Sexual Activity with Certain Minors (16-17 years old), in violation of Section 794.05(1), Florida Statutes.  Plaintiff Kenneth W. Greene was originally convicted in 2004 of Possession of a Photo or Picture Showing Sexual Performance of a Child, in violation of Section 827.071(5), Florida Statutes.  *See* Case Dockets, attached hereto as Composite Exhibit A.  Plaintiffs claim that by requiring them to place a sign on their property during Halloween informing the public that they are not handing out candy (with no reference to the fact that they are RSOs), as well as limiting their ability to place displays on their property that might attract children during holidays and seasonal events, the City's Code violates their First Amendment rights, causing them anxiety and distress.

In Florida, the Legislature determined that "[r]epeat sexual offenders, sexual offenders who use physical violence, and sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety."  Fla. Stat. § 775.21(3)(a) (2022).[1]  Moreover, "[s]exual offenders are extremely likely to use physical violence and to repeat their offenses, and most sexual offenders commit many offenses, have many more victims than are ever

---

[1] There is a statutory difference between sexual offenders and sexual predators. Sexual offenders are those individuals who have been convicted of certain sex crimes (even one time), many involving minors. *See* Fla. Stat. § 943.0435(h)1. (2022). Sexual predators, defined under the Florida Sexual Predators Act, Section 775.21, Florida Statutes, are those who have repeated sexual offenses or who have been convicted of a first-degree felony (*i.e.*, more violent sexual offenders).

reported, and are prosecuted for only a fraction of their crimes." *Id.*  Both sexual offenders and sexual predators must register in Florida, and both are subjected to many legal restrictions on their activities.

## II. **The City's Code History Governing Prohibited Activities for Sexual Offenders and Sexual Predators.**

In the City, Section 685.104 of the Code spells out "prohibited activities for sexual offenders and sexual predators."  Plaintiffs complain about two aspects of this section, one involving the posting of a sign on their property during the Halloween holiday that simply reads "no candy or treats here," and one involving a limited ban on certain displays on their property, if those displays are "primarily targeted to entice, attract, or lure a child" onto their property. *See* Motion, Exs. 2-3, Code §§ 685.104(a)(3)(ii), (iv).  The Jacksonville Sheriff's Office (JSO) enforces the provisions of Chapter 685, but there are no allegations that either Plaintiff has ever been fined or arrested under the Code.

In 2015, Chapter 685 was amended to address loopholes of which RSOs in Jacksonville were taking advantage to continue to endanger children.  The original 2010 version of the legislation prohibited Halloween displays, and it contained findings by the City as to the dangers to children posed by RSOs participating in Halloween and using displays to entice children onto their properties. *See* Ord. 2010-836-E, attached hereto as Exhibit B.  After extensive legislative findings, the City amended the Code by Ordinance 2015-214-E in

order to protect children from being enticed by any displays or decorations on an RSO's property. *See* Motion, Ex. 1. The revisions did not ban all displays, only those primarily targeted to lure children onto an RSO's property.

Nonetheless, shortly after the 2015 amendments, a federal lawsuit ensued in this Court. *See Doe and Doe v. City of Jacksonville*, 3:15-cv-01401-MMH-JRK. That lawsuit, like this one, challenged the display prohibition in the Code. Ultimately, as a result of mediation handled by Judge Schlesinger, the 2015 lawsuit settled with all parties agreeing on the amended Code language that now appears in the 2016 version of Section 685.104. *See* Motion, Ex. 2; *Doe*, 3:15-cv-01401-MMH-JRK, Docs. 36, 38-39. The parties, including the two RSOs who brought the 2015 lawsuit on First Amendment and vagueness grounds, agreed to the "primarily targeted toward children" language in the again-challenged display prohibition in Code Section 685.104(a)(3)(iv) and in the Code definition of "display."

Now, more than six years later, Plaintiffs challenge the Code's prohibitions in this same Court on similar First Amendment grounds, including a claim that the agreed-upon language in the display prohibition is vague such that reasonable minds cannot discern its meaning. Plaintiffs only challenge the sign requirement (in relation to Halloween) and the display prohibition (not in relation to Halloween) in Chapter 685. They seek damages for their "anxiety and distress," attorney's fees, and declaratory and injunctive

relief.  Docs. 1, 2.  As they have never been fined or arrested, they have no other actual damages.

## III.   **Plaintiffs are Unlikely to Succeed on the Merits.[2]**

### A. **The Sign-Posting Provision in City Ordinance Section 685.104 Can Be Constitutionally Applied to Certain Sexual Offenders and Sexual Predators Whose Crimes Involve Children.**

Plaintiffs argue that Section 685.104(a)(3)(ii) of the Code, which requires all sexual offenders or sexual predators to post a sign at their residences reading "no candy or treats here," amounts to compelled speech in violation of the First Amendment.  Plaintiffs claim the Eleventh Circuit's recent decision in *McClendon v. Long*, 22 F. 4th 1330 (11th Cir. 2022), forecloses the sign requirement as it cannot meet strict scrutiny.[3]  While *McClendon* did hold that forced posting of signs on private property of all sex offenders, regardless of

---

[2] A preliminary injunction "is an extraordinary and drastic remedy not to be granted unless the movant clearly [establishes] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  If the movant fails to carry its burden of proving *even one* of the prerequisites, the preliminary injunction must be denied, regardless of whether it meets the other requirements.  *See id.*

[3] In good faith, given the pending Motion and the *McClendon* decision, JSO has agreed not to enforce the sign provision during Halloween 2022.  *See* Declaration of Lt. Derek Porter, attached hereto as Exhibit C, at ⁋ 4.  However, JSO has had problems with RSOs violating the sign provision in the past and has simply reminded them of the requirement without further action.  *Id.* at ⁋ 5.  More importantly, JSO has had problems with RSOs actively trying to use candy or decorations to entice children onto their property, and therefore JSO will continue to enforce the remaining provisions of Chapter 685.104.  *Id.* at ⁋⁋ 4, 6.

whether their individual crimes involved children or adults, was compelled speech that was not narrowly tailored to meet a compelling government interest in protecting children, the Court did not hold that such signs can *never* be required for certain sexual offenders.  In fact, the Court held that protecting children is *per se* a compelling interest, but such a provision needs to be narrowly tailored to meet that interest, suggesting that strict scrutiny could be met under the right circumstances.  *Id.* at 1338.

There are differences between the county policy in *McClendon* and the sign requirement in this case.  In *McClendon,* the sheriff's office, itself, placed large warning signs on the properties of all sex offenders regardless of whether they were classified as having an increased rate of recidivism, also stating that the signs were a "community safety message" from the sheriff's office.  *See id.* at 1333-34.[4]  Here, the City requires a small, two-inch letter sign simply stating that there are no candy or treats at the residence, nothing more.[5]

---

[4] Notably, prior to 2018, the sheriff's office in *McClendon* had provided sexual offenders with fliers to place on their doors during Halloween, apparently without challenge.  *See id.* at 1335.

[5] Plaintiffs contend that the signs "effectively announce to the public that they are sexual offenders and that they pose an extreme danger to children," but the signs convey no such message.  Motion at 11.  The signs only state "no candy or treats here." Such a statement could be for any reason, including the obvious reason that the homeowner does not want to participate in Halloween.  While even non-ideological factual statements can be compelled speech, the signs in this case are nonetheless different than the larger signs in *McClendon*, which were posted by the sheriff, included an explicit warning, and specifically stated they are being posted by law enforcement for a public safety purpose.

In any event, *McClendon* does not foreclose all sign requirements under different circumstances.  The Eleventh Circuit recognized that governments have a compelling interest in protecting children from sexual abuse, but the sign policy there was not narrowly tailored to meet that interest because it applied across-the-board, regardless of the offender's crime or the status of the victim.  What the Court did *not* hold was that *all* such sign requirements are unconstitutional, no matter how narrowly tailored.

In *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017), cited by Plaintiffs, the Supreme Court held that a blanket prohibition on sexual offenders accessing social media was not narrowly tailored to survive strict scrutiny, but the Court emphasized that "this opinion should not be interpreted as barring a State from enacting more specific laws than the one at issue."  The Court reasoned that "it can be assumed the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor…"  *Id.*  That is exactly what the City has attempted to do here by enacting both the sign requirement and display prohibition: prevent RSOs from engaging in *conduct* that would result in contact with minors.

Here, both Plaintiffs were convicted of sexual crimes involving minors, and there are other individuals also convicted of crimes involving children, which the City has recognized pose a specific danger of recidivism, particularly

7

at Halloween or during other events targeted toward children.  In fact, JSO has confirmed that RSOs have a history in Jacksonville of doing so.  *See* fn. 1, *supra*; Ex. C at ¶¶ 4, 6.  Moreover, sexual predators are those convicted of repeat offenses or particularly heinous crimes involving children, making the City's public safety interest even more compelling as to those individuals.   If *McClendon* forecloses the City's current sign requirement, the City reserves its right to enact a narrowly tailored ordinance to protect children at Halloween.

### B. The Code's Narrow Ban on Home Displays Does Not Violate the First Amendment and is Not Unconstitutionally Vague.

Plaintiffs claim Section 685.104(a)(3)(iv) of the Code, banning home displays of sexual offenders and sexual predators if the displays are "primarily targeted to entice, attract, or lure a child onto any residence or property," is unconstitutional for two reasons.   First, they claim this provision unconstitutionally infringes on their right to engage in expressive conduct in violation of the First Amendment.   Second, they argue this provision is unconstitutionally vague.  Plaintiffs are incorrect as to both claims.[6]

---

[6] Because both Plaintiffs are RSOs whose crimes and convictions involve illegal sexual contact with or sexual interest in children, these Plaintiffs fall squarely within the reach and intent of the City's display prohibition.  They have no standing to challenge this provision on behalf of any other convicted individual who is required to register as a RSO under state law for a non-child related offense.

i.  <u>The display provision is not aimed at expression.</u>

The display prohibition on its face does not violate the First Amendment. As shown above, this provision simply furthers public safety and the protection of children by limiting enticing decorations primarily aimed at children.  This is a narrow category of displays, and it would not include decorations such as reasonable light or religious displays, which are not "primarily targeted" to invite children onto an RSO's property, a *mens rea* requirement for those RSOs engaging in decorating their property.  The City is furthering its compelling interests in such regulations, while leaving alternative channels open for Plaintiffs to engage in expression through all kinds of displays that are not used to entice or attract children onto their property.  Simply put, a violator must have put up a display with the understanding and intent that doing so would invite children onto his or her property.

Contrary to Plaintiffs' assertions, the City's interest in public safety is not "speculative" and was highlighted in enacting the amendments well over a decade ago.  The legislative history of the 2010 and 2015 amendments to the ordinance are replete with findings supporting the need to protect children from recidivist sexual offenders and sexual predators.  *See* Ex. B.  The City cited to the State requirements for registration of RSOs, as well as the rate of sexual victimization and recidivism of offenders.  *See id.* at 2, *citing Smith v. Doe,* 538 U.S. 84, 103 (2003). Furthermore, Halloween *and other holiday*

*activities* present increased opportunities for such sexual offenders to abuse children. *Id* at 3. The City found that activities such as "partying and handing out candy" can lure children and increase their contact with RSOs, posing a risk and thus necessitating the 2010 Ordinance. *Id.* When the Ordinance was amended in April 2015, these findings were reiterated. *See* Motion, Ex. 1; *citing Hobbs v. County of Westchester*, 397 F.3d 133 (2d Cir. 2005). The City cited to the "experience in the field" of the JSO for the need to strengthen the restrictions found in Chapter 685 to protect children. *Id.* at 1-2.

The Court should not enjoin the City from enforcing its limited display provision enacted solely to protect children. *See, e.g., Wilson v. Lexington-Fayette Urban County Government*, 201 Fed. App'x. 317, 323-24 (6th Cir. 2006). The provision simply restricts individuals convicted of sexual offenses involving children (like these Plaintiffs) from using displays to entice children, leading to the recognized danger of recidivism.[7] In short, it does not matter the content of the display; what matters is whether it would entice children onto an RSO's property. There can be no stronger purpose to all of Chapter 685 than the protection of children. These public safety and welfare interests,

---

[7] Of course, the restricted rights of sex offenders have been upheld by courts due to the nature of their conduct and public interests protected. *See, e.g., Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 768 (7th Cir. 2004); *Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729 (7th Cir. 2006).

especially where children are involved, have certainly been recognized as compelling interests by courts.  These are the interests the Code seeks to further by restricting certain *conduct* on the part of registered sexual offenders and predators.

Common sense dictates that the display prohibition is only aimed at holiday or seasonal displays with the known likelihood of attracting children to closer contact with RSOs by luring them to *enter the property*, not at the many reasonable, typical holiday displays in the Plaintiffs' examples.  As mentioned above, Halloween is a known holiday where there is an expectation that children will come onto private property; however other examples from other holidays where such intent would also be clear include having a Santa Claus booth where children can come meet Santa, advertising an Easter egg hunt and associated displays, having a petting zoo or pony rides, or offering other treats.  There should be no expectation that normal decorations will invite children onto properties during most holidays.  The prohibition does not prohibit simple displays of speech, lights or flags on Plaintiffs' property.

The intent of this provision is obviously to limit contact between RSOs and children, not to restrict expression or adult-oriented displays.  The display prohibition should be construed by the Court in accordance with the City's compelling interest in public safety by restricting certain conduct by RSOs.  *See also Maryland v. Craig*, 479 U.S. 836, 855 (1990); *Hodgson v. Minnesota*, 497

U.S. 417, 444 (1990); *Prince v. Massachusetts*, 321 U.S. 158, 168-70 (1944). The City is only regulating a narrow category of displays, not nearly all displays. *See Hobbs*, 397 F.3d at 147, 158 (upholding an executive order that prohibited individuals convicted of sexual offenses from obtaining a permit to perform on county property if the performances would "entice" children to congregate around such persons, as purpose of the prohibition—to protect the safety of vulnerable children from RSOs who would entice them—was not content-based and thus intermediate scrutiny applied). The prohibition in *Hobbs*, like the display prohibition here, furthered the government's *compelling* interest in protecting children, and "focus[ed] on the safety of children and aims to limit the opportunity for such a convicted sexual offender to attract children with whom he might later engage in child molestation." *Id.* at 397 F.3d at 147, 152.

Importantly, the City made specific findings in relation to the 2010 ordinance and its 2015 amendments, and it need not conduct its own studies to conclude that RSOs, given the high risk of recidivism, pose a threat to children such that certain enticing conduct needs to be regulated and prohibited. *See id.* at 153, *citing City of Erie v. Pap's A.M.*, 529 U.S. at 296. The City need only show that the Code provision "promote[s] a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989). The display provision is narrowly tailored to meet a substantial—in fact,

compelling–City interest in the protection of children.  *See Hobbs*, 397 F.3d at 153; *see also Doe v. City of Albuquerque*, 667 F.3d 1111, 1121 (10th Cir. 2012) (citing cases where courts have upheld laws imposing restrictions against RSOs); *Packingham*, 137 S. Ct. at 1737 (recognizing state interest in prohibiting RSOs from engaging in conduct that could result in contact with minors).

The limited display prohibition here differs from the broad sexual offender act at issue in *Doe v. Harris*, 772 F.3d 563, 579-82 (9th Cir. 2014).  In *Doe*, the broad restrictions in California's law were ambiguous as to what "internet identifiers" sexual offenders had to provide to the State, and the act was "arguably inconsistent."  *Id.* at 578.  The law did not survive intermediate scrutiny because it was not narrowly tailored, even though the district court attempted to narrow its terms.  *See id.*  Here, the display prohibition contains common sense, defined terms requiring that RSOs *target* their displays *primarily* toward attracting children onto their property, and therefore it is "reasonably susceptible" to a constitutional, narrowing construction.  *Id.*  The provision can be construed in a way that makes the prohibition a narrow restriction on RSO conduct, not a broad prohibition on otherwise adult expression that would "chill" protected speech.

Certainly, "it is almost always possible to hypothesize a less restrictive alternative to any ordinance," but courts should not be put in the position of

having to decide what alternative language best meets a city's compelling needs in relation to conduct that threatens the safety of children, "a task courts are ill-equipped to perform." *Assoc. of Community Organizations for Reform Now v. Town of East Greenwich*, 453 F. Supp. 2d at 394, 406 (D.R.I. 2006) (discussing the safety hazards of door-to-door solicitation.)   Given the long-recognized *compelling* interest in protecting children, common knowledge shows that limiting decorations to prevent contact between RSOs and children meets constitutional scrutiny. *See Assoc. of Community Organizations*, 453 F. Supp. 2d at 414 (stating that the town did not need to provide specific evidence or statistics to support its purported interests in regulating door-to-door solicitation, as "it is common knowledge" that crime occurs during solicitation, and it would make no sense to wait for harm to occur before passing a regulation) (citation omitted).   Plaintiffs have not met their burden to show that such interests are not being furthered by the limited display prohibition.

ii.   <u>The display prohibition is not void for vagueness.</u>

The display provision is also not unconstitutionally vague. Appropriately construed by the Court in light of the City's explicitly stated legislative intent, the narrow display prohibition reasonably alerts sexual offenders and predators to the conduct that is prohibited–having decorative displays that would specifically entice or lure children onto the individual's property.   An RSO of ordinary intelligence is given fair notice of the scope of

14

this provision.  *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  This is all the clarity that is required.

As the Supreme Court has reasoned, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language."  *Id.* at 110. Nor can every possible avenue of violation be predicted and legislated.  Courts should simply construe language according to its plain meaning and decide whether it "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."  *Roth v. United States*, 354 U.S. 476, 491 (1957).

Here, the Court must decide whether RSOs such as Plaintiffs would sufficiently understand that they are not to use displays that are primarily targeted to entice children.  Any possible over-definition of what the provision could conceivably cover can be dealt with and cured through "case-by-case analysis and review."  *Hobbs v. County of Westchester*, 2003 WL 21919882 *7 (S.D.N.Y. 2003).  Normal light and religious displays would not be covered; clearly overdone holiday displays that include characters, activities or objects primarily targeted to "entice, attract, or lure a child onto any residence or property" would be covered.  Certainly, displays that explicitly invite children onto the property are covered.  This Court should use reason and common sense in construing the provision, viewing it in light of what a reasonable RSO

would believe is prohibited and within the stated intent of the City.[8]  This was certainly true in 2016 when the City amended the display prohibition with the agreement of other RSO plaintiffs, who understood what is prohibited by the provision.

Each of the active verbs in the display prohibition indicates intent or some sort of *mens rea* on the part of the individual putting up the display to *primarily target* that display to children, not just to put up traditional decorations that are not invitations to come onto private property but are objectively associated with holidays or seasonable events celebrated by people of all ages.  "Primarily" means "essentially; mostly; chiefly; principally," while "target" means "to use, set up, or designate as a target or goal."  These terms are followed by: "entice" (meaning "to lead on by exciting hope or desire; allure; inveigle")[9]; "attract" (meaning "to draw by appealing to the emotions or senses, by stimulating interest, or by exciting admiration; allure;

---

[8] Plaintiffs do not claim that the display prohibition is unclear with respect to Halloween displays.  Presumably, this is because Plaintiffs understand that *any* Halloween display will entice and lure children to their property.  Halloween is the only holiday where children are impliedly invited on all private properties unless active steps are taken to discourage them.  The fact that Plaintiffs do not cite a desire to decorate during Halloween underscores that they understand what they can and cannot do with regard to displays.

[9] Interestingly, similar "entice" language was used in *Hobbs* and was not considered vague.

invite"); *or* "allure" (meaning "to attract, entice, or tempt").[10]   In other words, if an RSO's chief "target or goal" in putting up a display is to excite, attract, stimulate, invite, entice, or tempt children to come on onto the private property, that display is prohibited.   Ordinary reasonable individuals know what these words mean, and they certainly know what their "primary target" or goal is when they put up decorations.   Previous RSOs understood them because these words are not vague.

If the Court finds any of these words ambiguous, it can also turn to the City's legislative history to determine the meaning and intent of its Code provision.  *See, e.g., In re Racing Svcs., Inc.*, 779 F.3d 498, 503 (8th Cir. 2015) (reasoning that court can review legislative history if law is ambiguous or adhering to its strict letter would lead to absurd results).   Moreover, the Court, whenever possible, should construe laws so as to avoid unconstitutionality.  *See Backpage.Com*, 881 F. Supp. 2d at 1276.   As discussed above, the City's legislative intent, set forth in 2010 and repeated in the amendments to the Code in 2015 and 2016, was to restrict the contact between RSOs and children, not to ban them from free expression or free association with adults (and familial children) in all other circumstances.   Any reasonable RSO should

---

[10] These common definitions are taken from dictionary.com, last visited on September 7, 2022.

understand which displays should be, and are, prohibited by Code.[11]  This means only those displays specifically used to entice and attract children. Religious symbols, lights and neutral holiday displays do not do that.

Properly construed, the display prohibition exists for the common-sense, immensely important, protection of children in the City when sexual offenders or predators wish to entice them with decorations and prey upon them.  As such, the *sine qua non* of the preliminary injunction analysis dictates that the Plaintiffs' Motion should be denied as to the display prohibition.  *See SEC v. Fife*, 311 F.3d 1, 8 (1st Cir. 2002).

## IV.  Plaintiffs Will Not Suffer Irreparable Injury if the Limited, Content-Neutral Display Ban is Enforced.

Plaintiffs also cannot show that they will suffer an irreparable injury should preliminary injunctive relief be denied as to the display prohibition.  *See Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir. 1995); *McDonald's Corp. v. Robertson*, 147 F.3d at 1301, 1306 (11th Cir. 1998).  Plaintiffs have no basis to argue that they would be irreparably harmed during the course of these proceedings if they cannot entice or lure children during holiday or seasonal

---

[11] Given the City's clear intent in passing the display prohibition in 2010 and then amending it in 2015 and shortly thereafter in 2016 (as a result of a settlement with previous RSO plaintiffs), it defies common sense to suggest that *any* holiday display or decoration, such as a simple wreath on the door or a tree or "piece of furniture" *inside* the home, would entice children to come onto the property and closer to contact with its owner.  This is different than handing out or providing candy or other inviting objects that would certainly draw children to the property.

events or through decorations.  The display provision is not content-based and does not unconstitutionally limit Plaintiffs' free speech or association rights as adults.  It does not apply to the overreaching hypotheticals Plaintiffs put forth in their Motion.  Properly construed in accordance with the stated legislative intent, the display provision only curtails holiday and seasonal activities that could lure or entice children and thus pose a potential safety risk.

Arguing that First Amendment activity cannot take place does not create an irreparable injury where the City's regulation is not content-based because the prohibition is not aimed at protected speech or association and leaves plenty of alternative channels open for adults to exercise their First Amendment rights.  When the record presented by Plaintiffs is inadequate, particularly on the irreparable harm requirement, the Court should not grant the extraordinary remedy of a preliminary injunction.  *See Northeastern Fla. Chapter of the Assoc. of General Contractors of America v. City of Jacksonville*, 896 F. 2d 1283, 1286 (11th Cir. 1990).  That is the case here, as this provision has been in place in its current form since 2016, and the Plaintiffs have never been fined or arrested.

## V.    **The Balance of Harms Favors the City.**

The serious harm to the City, and the children therein, that would result from striking a longstanding portion of its Code regulating the contact between sexual offenders and predators, right before Halloween, outweighs any harm

19

that could conceivably be caused by application of limited restrictions on such contact with children.  If the display prohibition is struck down, the City would be forced to scramble to create a new prohibition or else allow RSOs to put up *any* enticing, child-oriented decorations.  The City has a substantial obligation to provide for the safety of its children, and it has long been recognized that cities have a significant interest in maintaining their police powers.  Plaintiffs have shown nothing to override this compelling interest of the highest order.[12]

## VI.   <u>Conclusion</u>

Plaintiffs cannot demonstrate any of the criteria for an extraordinary preliminary injunction, at least as to the display prohibition.   They offer nothing but overreaching hypotheticals.  The City respectfully requests that this Court deny Plaintiffs' Motion for Preliminary Injunction (Doc. 2) as to the display provision.

Respectfully submitted,

**OFFICE OF GENERAL COUNSEL**

*/s/ Craig D. Feiser*
**CRAIG D. FEISER**
Assistant General Counsel
Florida Bar No. 164593
CFeiser@coj.net; BOsburn@coj.net
**LAURA J. BOECKMAN**

---

[12] It is also important to note that Chapter 685 of the Code contains a severability provision at section 685.104(g).  Plaintiffs here only challenged two select provisions of Chapter 685.

Assistant General Counsel
Florida Bar No.: 527750
LBoeckman@coj.net;
SStevison@coj.net
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 255-5100 (Telephone)
(904) 255-5120 (Facsimile)
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of September, 2022, a true and correct copy of the foregoing was filed with the Clerk of Court for uploading to the CM/ECF system which will send notice of electronic filing to all counsel of record who are participants in the Court's ECF filing system: Ray Taseff, Esq. and Dante P. Trevisani, Esq., P.O. Box 370747, Miami, FL 33131-2309.

*/s/   Craig D. Feiser*
*Counsel for Defendants*